Filed 1/4/23  P. v. Valenzuela CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>JOHNATHAN VALENZUELA,<br><br>　　　Defendant and Appellant. | F082450<br><br>(Super. Ct. No. BF178274A)<br><br><br>**OPINION** |

　　　APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

　　　William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

On September 14, 2019, defendant Johnathan Valenzuela robbed Alfredo H.[1] at gunpoint. A jury convicted defendant of second degree robbery (Pen. Code, § 212.5, subd. (c), count 1)[2] and found true the allegation he personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)); possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2); and possession of a short-barreled rifle (§ 33210, count 3). As to all three counts, the jury found true the allegation he committed the offenses for the benefit of the East Side Bakers (ESB) gang (§ 186.22, subd. (b)(1)).

The trial court sentenced defendant as to count 1 to the upper term of five years, plus a 10-year term for the firearm enhancement (§ 12022.53, subd. (b)) and a 10-year term for the gang enhancement (§ 186.22, subd. (b)(1)). As to counts 2 and 3, the trial court sentenced defendant to the upper term of three years, plus an additional four-year term for the gang enhancement (§ 186.22, subd. (b)(1)) for both counts, but stayed these sentences pursuant to section 654. The total term imposed was 25 years.

On appeal, defendant contends: (1) he was denied due process of law due to a prejudicial, unduly suggestive in-field identification that subsequently tainted Alfredo's in-court identification of defendant; (2) the trial court abused its discretion in refusing to stay or strike the section 12022.53, subdivision (b) 10-year sentence enhancement; and (3) he is entitled to the benefit of newly enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which amended the language of section 186.22, and added section 1109 requiring bifurcation of the trial of gang enhancements and substantive gang offenses from that of the underlying offenses upon a defendant's request. The People concede the amendments to section 186.22 apply retroactively, but argue the jury would

---

[1]    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

[2]    All further references are to the Penal Code, unless otherwise stated.

2.

have still found the gang enhancements true under the amended law and any deficiency in the jury instructions was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). Additionally, the People argue newly added section 1109 does not apply retroactively, but contend that regardless defendant is not entitled to reversal of his conviction because he was not prejudiced by the trial court's failure to bifurcate the gang enhancement.

Further, in supplemental briefing, defendant contends newly enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) apply retroactively to his case, and he is entitled to the benefits of newly amended section 1170. The People agree defendant is entitled to the benefits of the recent amendments and, thus, remand is required.

We accept the People's concession, vacate the sentence, and remand for resentencing. Further, we conclude the entirety of Assembly Bill 333 applies retroactively to defendant's case, and as to all offenses defendant is entitled to a dismissal of the section 186.22 gang enhancements. The People are not foreclosed from retrying defendant on the gang enhancement upon remand. The other claims lack merit. Accordingly, in all other respects, we affirm the judgment.

**SUMMARY OF FACTS**

**I.     The Robbery**

On September 14, 2019, Alfredo sold ice cream and corn from a cart on the side of the road in Bakersfield. At or around 5:00 p.m., two males approached him from a nearby house and attempted to purchase a bag of corn and pork skin chips. The older male, later identified as defendant, told Alfredo they did not have money and tried to use a membership card to pay, but Alfredo did not accept the card.

Subsequently, a female walked out of the house and asked Alfredo if the males had paid, which he told her they had not. She pulled out a $20 bill, but Alfredo did not have change. She then went to a nearby store to get change and was gone for about eight

3.

minutes, and eventually came back and paid for the food. During this time, Alfredo noticed the younger male had a firearm tucked in his waistband. The younger male pulled up his T-shirt and showed Alfredo the firearm.

Alfredo walked "swiftly" away and a second female approached him to make a purchase. She purchased food and at this point "one of these two males came out of the house … [a]nd he had headed over to the opposite corner to where [Alfredo] was standing." Alfredo walked away and defendant eventually approached him from his left side and screamed at him. Defendant spoke to Alfredo in English and demanded he hand over the money. During this time, defendant pulled out a firearm[3] and pointed it at Alfredo's stomach. Alfredo "was afraid" and handed over either $90 or $100 and his cell phone[4] to defendant. Alfredo testified defendant wore a black shirt, shorts, and Vans tennis shoes and had a tattoo on the right side of his neck. Alfredo then ran into a nearby house and a female inside the house called 911. While inside, Alfredo heard gunshots and observed defendant attempt to take his cart.

## II.     Subsequent Law Enforcement Investigation

Approximately, 15 minutes later, Bakersfield Police Department (BPD) officers arrived on scene. The female who called 911 and her children translated for Alfredo and provided law enforcement a description of defendant. BPD Officer D. Hamma received a description of defendant and located him walking down an alley. Hamma then drew his firearm, placed defendant in custody, and subsequently read defendant his *Miranda*[5] rights. Officers noticed a tattoo of the letters "TWK" on defendant's neck and confirmed with him it stood for "True West [K]illa." Further, defendant had "East Side" tattooed on his chest, the word "East" on the back of his left upper arm, "Side" on the back of his

---

[3]     Alfredo testified the firearm was a "small rifle."

[4]     It was a black Samsung cell phone with a screensaver of Bart Simpson from the television show *The Simpsons*.

[5]     *Miranda v. Arizona* (1966) 384 U.S. 436.

right upper arm, "KC" on his right shoulder, and three dots tattooed on the web of his left hand. Defendant admitted to being an active member of the ESB gang and stated he had been with the gang for three to four years. During a subsequent search, officers located $75 in cash and two cell phones on defendant's person. Alfredo later identified the cell phone with the Bart Simpson background as belonging to him and unlocked it with a passcode.

Subsequently, officers contacted Alfredo and told him "they had apprehended one of them [and Alfredo] needed to be taken somewhere." Officers then transported Alfredo to the area where defendant was in custody. Hamma asked Alfredo some questions and a male citizen translated for him because Alfredo only spoke Spanish. Hamma testified there are times when law enforcement utilizes a member of the community to translate when no officers are available. During this time, BPD Officer J. Garcia read Alfredo an in-field admonishment,[6] which was translated to him by the male, before having him observe defendant. Alfredo then identified defendant as the individual who robbed him.

BPD Officer J. Montgomery canvassed the area of the robbery and located a firearm in the side yard of a home behind some bushes. The firearm was a semiautomatic rifle with a sawed-off barrel. Alfredo testified this firearm appeared to be similar to the one used against him during the robbery.

## III. Gang Evidence

### A. Cell Phone Evidence

BPD Officer L. James testified he conducted an investigation into defendant's social media presence and discovered he had a Facebook account. Pursuant to a valid

---

**6** The admonishment provided to Alfredo was as follows:

"[K]eep in mind the person who committed the crime may or may not be among the present. Just because a person is in custody does not mean he committed the crime. This applies only in situations where it will be obvious that a person is in custody. Do not talk to any anyone.… Do not talk to any other witnesses about the identification."

search warrant, James located a Facebook account under the first name of "Slickdalowk" and last name of "East Thedeal." There were multiple photographs of defendant with a firearm and a high capacity magazine, similar to the firearm located at the robbery scene.

**B.  Prior Law Enforcement Contacts**

On May 3, 2017, BPD Officer M. Malley stopped defendant's vehicle. Officers searched the vehicle and located a short-barreled shotgun in the trunk and a blue bandana on the driver's seat. Defendant told officers he was a Sureño gang member, but did not directly admit he was an ESB member. Additionally, Malley testified he had observed defendant earlier in the day near a gang memorial event. A certified copy of defendant's conviction for unlawful possession of a firearm (§ 25400, subd. (c)(4)) was admitted into evidence.

On February 17, 2018, Kern County Sheriff's Deputy J. Fernandez observed defendant standing in a house's front yard. Fernandez spoke with defendant and defendant told him he was an active member of the ESB and was "jumped into" the gang in high school. He observed defendant with tattoos on the back of his left arm of "East" and "Side" on the back of his right arm.

On July 3, 2019, BPD Officer N. Poteete observed defendant walking down the street. Poteete contacted defendant and discussed his gang membership. Defendant denied being a gang member, but Poteete noticed a "TWK"[7] neck tattoo and other gang tattoos on his body. Defendant admitted to attending a memorial for a gang member earlier in the day.

On July 13, 2019, BPD Officer B. Thebeau contacted defendant and noticed the word "East Side" tattooed across his chest. Defendant "nodded in the affirmative" when asked if he was a member of the ESB. Defendant further stated he had a nickname of "Slick."

---

[7]  Defendant told Poteete "TWK" stood for "The World Kings."

### C.     Predicate Offenses

On June 28, 2017, BPD Officer L. James responded to a shooting in Bakersfield. James arrived on scene and located a shooting victim suffering from minor gunshot injuries.  It was later determined the individual responsible was Angel Salazar.  Angel had the letters "E" and "S" tattooed on his chest, and the letter "B" tattooed on the top of his head.  A certified record of Angel's conviction for violations of sections 29820 and 245, subdivision (a)(1), along with a gang enhancement (§ 186.22, subd. (a)) were admitted into evidence.

On June 15, 2019, BPD Officer K. McNabb investigated a call regarding a gathering of suspected gang members.  Officers arrested Isaac Terrazas and located a .32-caliber revolver in his pocket.  Moreover, officers located a blue bandana in his pocket.  A certified copy of Isaac's conviction for possession of a firearm as a gang member (§ 25850, subd. (c)(3)) was admitted into evidence.

### D.     Gang Expert Testimony

BPD Officer Renee Garcia testified as a gang expert.  Garcia testified he contacted defendant and he stated he was from the ESB.  Defendant refused to speak with Garcia, which Garcia understood as "'shadowing.'"[8]  Garcia observed gang tattoos on defendant's body.

Garcia further testified the ESB's primary activities are shootings, murders, robberies, burglaries, assaults, and firearm possession.  The ESB gang falls under the umbrella of the Sureño gang and are foot soldiers of the Mexican mafia, a prison gang. ESB has a presence in Bakersfield and its members favor the color blue and throw hand sings forming the letters "E" and "S."  Garcia estimated there are currently 100 active ESB members.

---

[8]     "Shadowing" was described as a practice where gang members are not allowed to speak with law enforcement unless another member is in the area "or at least within earshot shadowing the conversation essentially to make sure that they are not cooperating with the police."

In Garcia's expert opinion, defendant was an active member of the ESB on September 14, 2019. Specifically, Garcia testified this opinion was based on:

> "[Defendant's] prior contacts with law enforcement, his self-admissions to being a member of the gang, the proof of him having somewhat hierarchy in the gang in collecting taxes for the Mexican Mafia, the gang tattoos, as well as all of his past criminal activity that he's been involved in."

Garcia then testified the use of firearms "is a status symbol within the gang" and that it can be used to "commit other crimes that will further benefit the gang." Further, he testified that as to the underlying offense, it was Garcia's opinion defendant committed the robbery to benefit the gang by "forcing others to give up their money and their property, … [so] they can use that money to either pay their hood taxes, their gang taxes" and "a violent crime like this has a negative effect on the community" by keeping people from reporting crimes in the future.

## ARGUMENT

### I. The In-field Identification and In-court Identification Were Reliable and Did Not Violate Defendant's Rights to Due Process of Law

Defendant first contends he was denied due process of law due to a prejudicial, unduly suggestive in-field identification that subsequently tainted Alfredo's in-court identification. We disagree.

#### A. Forfeiture

It is undisputed trial counsel did not object to the admission of Alfredo's in-field identification at trial and, thus, defendant has forfeited this claim on appeal. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*); *People v. Montes* (2021) 59 Cal.App.5th 1107, 1117 ["[T]he failure to object in the trial court generally forfeits a claim on appeal and this principle is applicable to constitutional claims."].) However, defendant argues any failure to raise the argument in the trial court gives rise to an

ineffective assistance of counsel claim.[9]  Waiver aside, we have discretion to address the merits of this claim (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7), and choose to do so in this case.

### B.     Applicable Law

"[T]o determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*Cunningham, supra*, 25 Cal.4th at p. 989.)  An identification procedure is unduly suggestive if it "'suggests in advance of identification by the witness the identity of the person suspected by the police.'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 413 (*Ochoa*).)  "'Only if the challenged identification procedure is unnecessarily suggestive is it necessary to determine the reliability of the resulting identification.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 902.)  In other words, "'[i]f we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends.'" (*Ochoa, supra*, at p. 412.)  The defendant bears the burden of showing the identification procedure was unduly suggestive or unreliable.  (*Ibid*.)

On appeal, we review the trial court's findings of historical fact deferentially, but independently review "whether, under those facts, a pretrial identification procedure was unduly suggestive." (*People v. Gonzalez* (2006) 38 Cal.4th 932, 943.)

---

[9]     Because we conclude Alfredo's in-field identification was reliable and was not unduly suggestive, we need not address defendant's separate ineffective assistance of counsel claim.

## C. Analysis

Defendant first urges this court to "join the number of jurisdictions choosing to abolish show-ups in light of psychological studies revealing their inherent unreliability." However, as defendant concedes, our Supreme Court has found an in-field identification "'is not inherently unfair.'" (*Ochoa, supra*, 19 Cal.4th at p. 413.) This is "because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind, and because the interests of both the accused and law enforcement are best served by an immediate determination as to whether the correct person has been apprehended." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387.) Accordingly, we choose not to depart from our Supreme Court's conclusion.

Alternatively, defendant contends the in-field identification in this case was unduly suggestive. First, defendant argues Alfredo's in-field identification was significantly flawed because he was told, en route to where defendant was arrested, officers had "apprehended one of them." We find *People v. Anthony* (1970) 7 Cal.App.3d 751 (*Anthony*) and *People v. Ballard* (1969) 1 Cal.App.3d 602 (*Ballard*) instructive. In *Anthony*, the court did not find the victim's identification suggestive when an officer returned the defendant and his coparticipant, handcuffed back to the scene where the robbery had occurred and asked the victim "'which was the one that came in.'" (*Anthony, supra*, at p. 764.) The court concluded, "The potential unfairness in such suggestiveness, however, [was] offset by the likelihood that a prompt identification within a short time after the commission of the crime will be more accurate than a belated identification days or weeks later." (*Id*. at pp. 764–765.) Additionally, in *Ballard*, law enforcement told the victim they "had two suspects who 'fit the description' that she had given them of the perpetrators of the offenses." (*Ballard, supra*, at p. 605.) The court did not find the language used by law enforcement "to be of such a suggestive nature as to make … the … identification unfair or untrustworthy." (*Ibid*.)

Here, the officer's statement to Alfredo they had "apprehended one of them" is not unduly suggestive. The officer told Alfredo they had apprehended a suspect, without providing a description, and is distinguishable from the statement in *Ballard* where law enforcement told the witness we have "two suspects who 'fit the description,'" which infers the detained individuals were the perpetrators of the offense. (*Ballard, supra*, 1 Cal.App.3d at p. 605.) However, any potential suggestiveness was mitigated by Officer Garcia's verbatim reading of the in-field admonishment informing Alfredo "the person who committed the crime may or may not be among the present" and "[j]ust because a person is in custody does not mean he committed the crime." (*People v. Garcia* (2016) 244 Cal.App.4th 1349, 1360–1361 [finding "curbside lineup" involving three suspects was not unduly suggestive where the victim was admonished not to infer guilt].) Moreover, Alfredo's "prompt identification within a short time after the commission of the crime" made his identification reliable. (*Anthony, supra*, 7 Cal.App.3d at pp. 764–765.) Law enforcement arrived about 15 minutes after the 911 call and subsequently transported Alfredo to where defendant was located. This short period of time made Alfredo's identification of defendant more credible than if it was done days or weeks later. (See *In re Richard W.* (1979) 91 Cal.App.3d 960, 970 ["'[A] prompt identification within a short time after the commission of the crime will be more accurate than a belated identification days or weeks later.'"].)

Second, defendant argues the use of a translator during Alfredo's identification "suggest[s] an environment that created an identification with only minimal indicia of reliability" because "there was no basis to presume that [Alfredo] had ever been properly admonished through an interpreter, nor did the police make any effort to assure that the interpreter, himself, did not influence the identification." We disagree. There is nothing in the record to suggest the translator did not properly translate the admonishment to Alfredo, nor is there anything to indicate the translator had any bias or motive to mislead or distort the information presented to him rather than translating neutrally. Defendant

11.

does not cite anything in the record, nor does he refer this court to legal authority to support his argument. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].) Accordingly, we conclude Alfredo's in-field identification was not unduly suggestive and, therefore, this forecloses defendant's due process claim (*Ochoa*, *supra*, 19 Cal.4th at p. 412), and we need not consider his related argument the in-field identification later tainted his in-court identification of defendant.[10]

## II. The Trial Court Properly Exercised Its Discretion in Refusing to Stay or Strike the Section 12022.53, Subdivision (b) Enhancement

Defendant further contends the trial court abused its discretion in refusing to stay or strike the section 12022.53, subdivision (b), 10-year sentence enhancement. Specifically, defendant argues the trial court failed to take into consideration his age and other mitigating factors before denying his request. We disagree.

### A. Additional Factual Background

The trial court made the following findings before denying defendant's motion to strike the section 12022.53, subdivision (b), enhancement:

> "The Court is taking the matter under submission. And I'm first going to consider the request for the Court to exercise its discretion to strike the firearm enhancement. And because there's been kind of an evolution in our California law with regard to sentencing enhancements. For purposes of this sentencing, I'm going to assume that I have the discretion to strike not only the firearm enhancement but also the gang enhancement under [section] 186.22[, subdivision] (b) (1). So I'm exercising my discretion as to both of those enhancements when I make this decision.
>
> "And the Court's discretion must be guided by what is in the interest of … justice. And I have a number of cases and other authorities that I look

---

**10** Because we find no error, we do not address prejudice, although the overwhelming evidence of guilt suggests none would attach even if this court concluded the in-field identification violated due process. (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 481.)

to when I'm deciding what is in the interest of justice. I will cite the case of [*People v. S.M.* (2017)] 9 Cal.App.5th [210,] 218. The Court discusses the exercise of discretion in deciding to dismiss charges or allegations in the furtherance of justice. And it states from the case law several general principles emerge. Paramount among them is the rule that the language of Section 1385, furtherance in justice, requires consideration both of the constitutional rights of the Defendant, and the interest of society represented by the People in determining whether there should be a dismissal. At the very least, the reason for dismissal must be that which would motivate a reasonable judge.

"The courts have recognized that society represented by the People has a legitimate interest in the fair prosecution of crimes properly alleged a dismissal which arbitrarily cuts those rights without a showing of detriment to the Defendant is an abuse of discretion.

"The Court cannot strike a sentencing enhancement solely to accommodate judicial convenience or because of court congestion, nor can a Court be guided solely by personal antipathy for the effect that the three strikes law—that is three strikes but it would be also the law relating to sentencing enhancement for the effect it would have on the Defendant, while ignoring the Defendant's background, the nature of his present offenses and other individualized considerations.

"The Court has—and this is [*People v. S.M., supra*, 9 Cal.App.5th] at page 219—the Court has to balance the interest in dismissing the enhancement against the harm to the public. The Court has to give consideration to any special status of the Defendant, including consideration of his age, education, criminal record and experience. Those are all individualized considerations, which the Court must consider in deciding whether relief under Section 1385 would be in the furtherance of justice.

"[*People v. S.M., supra*, 9 Cal.App.5th at p]age 220, the Court should be informed by generally applicable sentencing principles in exercising this discretion.

"In the case of *People* [*v.*] *Solis* [(2015)] 232 Cal.App.4th 1108, … 1124, they're discussing the *Romero*[11] decision, which also includes how the Court exercises its discretion under [section] 1385. And a sentencing Court's exercise of discretion to dismiss a prior strike is to be guided by the

---

[11]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

following standard: May the Defendant, in light of his current crime and his criminal history, background, character and prospects be deemed outside the spirit of the three strikes law in whole or in part and hence be treated as though he had not suffered the prior strike conviction. And, again, the court applies the same principle to the laws relating to the sentencing enhancements.

"Also, [California] Rules of Court Rule 4.428 which discusses striking enhancements under Section 1385, under (b). If the Court has discretion under section 1385 to strike an enhancement in the interest of justice, the Court also has the authority to strike the punishment for the enhancement under Section 1385[, subdivision] (c), determining whether to strike the entire enhancement only the punishment for the enhancement. The Court may consider the effect that striking the enhancement would have on the status of the crime as a strike, the accurate reflection of the Defendant's criminal conduct on his record, the effect it may have on the [a]ward of custody credits, and any other relevant consideration. So I'm considering all of these types of factors in exercising my discretion.

"I'm looking at the Defendant's criminal history. He turned 18 in 2015. He starts engaging in criminal conduct in 2017, with the DUIs. Now, in the same year he is engaged in illegal possession of a firearm, which is definitely escalating the seriousness of his criminal conduct and his danger to society.

"Also, resisting police officers. In 2018. He's now engaged in auto theft. He did go to [the California Department of Corrections and Rehabilitation (CDC)] from the 2017 conviction. And then the—that conviction, as well as the auto theft in 2018 resulted in his CDC commitment in 2018. He did not do well on post-release community supervision, violating a number of times.

"2019, again, conviction for the possession of illegal drugs. The offense in this case occurred around that same time in September of 2019. So the Defendant has basically been engaging in ongoing pattern of criminality since 2017, with no significant period where he was showing any effort to become a law-abiding citizen.

"The Court exercises its discretion considering the seriousness of the offenses in this case, again involving firearms. And I do not find it would be in the interest of justice considering all the factors to strike either the firearms enhancements or the gang enhancement, and those enhancements will not be stricken.

14.

"Exercising my discretion under [section] 1385 considering all the factors that I've cited.

"The Court makes the following findings and orders: I find no circumstances in mitigation. I find the following circumstances in aggravation: One, the Defendant's prior connections as an adult are numerous; two, the Defendant has served a prior prison term; three, the Defendant's prior performance on felony probation and post-release community supervision was unsatisfactory in that he violated terms and reoffended; four, the Defendant was on misdemeanor probation and post-release community supervision when the crimes were committed." (Italics added.)

## B.    Applicable Law

Section 12022.53, subdivision (b), states:

"Notwithstanding any other law, a person who, in the commission of a felony[, including robbery] specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." (§ 12022.53, subd. (b).)

Prior to 2018, the trial court was prohibited from striking an allegation under section 12022.53. (§ 12022.53, former subd. (h) ["Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."].) Subsequently, Senate Bill No. 620 (2017–2018 Reg. Sess.) amended section 12022.53, subdivision (h), to give trial courts discretion to "strike or dismiss" enhancements imposed under this section "in the interest of justice pursuant to Section 1385." (Stats. 2017, ch. 682, § 2.) "[T]he power to dismiss an 'action' under section 1385 includes the power to dismiss or strike an enhancement." (*People v. Thomas* (1992) 4 Cal.4th 206, 209.)

The denial of a motion to dismiss pursuant to section 1385 is reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing

decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

### C. Analysis

Here, the trial court properly exercised its discretion before denying defendant's motion to dismiss the section 12022.53, subdivision (b) enhancement. Defendant has failed to show the trial court acted in an "irrational or arbitrary [manner] that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) Before making its decision, the trial court "read and considered the statement in mitigation filed by the Defense and the request to strike enhancement under … Section 12022.53[,subdivision] (b)" and "reviewed that entire statement including all of the attachments, which are different exhibits relating to the Defendant, his life story, [and] information from family members." The trial court reasoned that it had to "balance the interest in dismissing the enhancement against the harm to the public," which included "giv[ing] consideration to any special status of the Defendant, including consideration of his age, education, criminal record and experience." In properly balancing these factors, the trial court concluded there were "no circumstances in mitigation" and the circumstances in aggravation included the fact "Defendant's prior [convictions] as an adult are numerous," he "has served a prior prison term," his unsatisfactory performance on felony probation, and the fact defendant was on

16.

"misdemeanor probation and post-release community supervision when the crimes were committed."

Nonetheless, defendant argues the trial court abused its discretion because it failed to properly consider his youth and other mitigating circumstances. However, nothing in the record supports this assertion, and the trial court expressly stated it weighed defendant's "age, education, … and experience," before concluding his lengthy criminal history and performance on probation outweighed these other factors. Regardless, courts are presumed to consider all relevant factors unless there is contravening evidence in the record, which here there is not. (*Carmony, supra*, 33 Cal.4th at p. 378.) Accordingly, the trial court's decision to not strike the section 12022.53, subdivision (b), enhancement is neither irrational nor arbitrary and does not constitute an abuse of discretion. (*Carmony, supra*, at p. 379.)

## III.    Assembly Bill 333

Assembly Bill 333 amended the language of section 186.22 to modify the showing necessary to prove gang offenses and gang enhancements (Stats. 2021, ch. 669, §§ 3–4, eff. Jan. 1, 2022), and added section 1109 (Stats. 2021, ch. 669, § 5, eff. Jan. 1, 2022), requiring bifurcation of the trial of gang enhancements and substantive gang offenses from that of the underlying offenses upon a defendant's request. (§ 1109, subds. (a), (b).)

### A.    Section 186.22

Defendant contends he is entitled to the benefit of newly enacted Assembly Bill 333 because it applies retroactively and argues that although the prosecution admitted predicate offenses during the trial, "no evidence, other than an officer's opinion, established beyond a doubt that the predicate crimes were actually done for the benefit of the" gang. The People concede the amendments to section 186.22 apply retroactively, but argue "remand is unnecessary because the jury would have found the gang enhancements to be true even under [Assembly Bill] 333's more stringent new requirements" and any deficiency in the jury instructions was harmless beyond a

reasonable doubt (*Chapman, supra*, 386 U.S. at p. 24). We conclude defendant is entitled to reversal of his section 186.22 gang enhancements, but also conclude the People are entitled to retry defendant on the enhancement if they so choose.

### i. *Applicable Law*

On counts 1 through 3, the jury found true gang enhancements (§ 186.22, subd. (b)). At the time of defendant's trial, "'criminal street gang'" was defined as "any ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, former subd. (f).) Assembly Bill 333 revised the definition of "'criminal street gang'" to require that members "collectively" (no longer "individually or collectively") engaged in a pattern of criminal activity. (§ 186.22, subd. (f); accord, *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1086.)

Additionally, Assembly Bill 333 redefined "'pattern of criminal gang activity'" (§ 186.22, subd. (e)(1)), a necessary requirement to proving the existence of a criminal street gang and, thus, a prerequisite to proving the gang crime and the gang enhancement. (See § 186.22, subds. (a), (b)(1); accord, *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823.) "'The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses.'" (*Rodriguez, supra*, at p. 822.) At the time of defendant's trial, "'pattern of criminal activity'" meant "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons …." (§ 186.22, former subd. (e).) Under this former definition, the

prosecution only had to prove that those associated with a gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another. (*Ibid.*; see *People v. Sek* (2022) 74 Cal.App.5th 657, 665.) It was unnecessary to prove the predicate offenses were gang related. (§ 186.22, former subd. (e); *Rodriguez, supra*, at p. 822.)

The amended statute made several changes to the definition and limited type of predicate offenses sufficient to prove the gang enhancement. "First, the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons). (§ 186.22, subd. (e)(1).) Second, the predicate offenses must be proven to have '*commonly* benefited a criminal street gang.' (*Ibid.*, italics added.) Third, the last predicate offense must have occurred within three years of the date of the currently charged offense. (*Ibid.*) Fourth, the list of qualifying predicate offenses has been reduced. (*Ibid.*) And fifth, the currently charged offense no longer counts as a predicate offense. (§ 186.22, subd. (e)(2).)" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477–478.) Most notably, the new element that the predicate offenses "commonly benefited a criminal street gang" requires that "the common benefit of the offense is more than reputational …." (§ 186.22, subd. (e)(1).) A new subdivision (g) was also added to section 186.22, specifying that "[e]xamples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

### ii. *Analysis*

The parties agree, as do we, that Assembly Bill 333's amendments to section 186.22 apply retroactively to this case, which is not yet final on appeal. Since the amendments to section 186.22 increase the threshold for conviction of a section 186.22 enhancement, defendant—whose judgement of conviction is not yet final—is entitled to

the benefit of these changes to the law. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1127 (*Ramos*).)

However, the parties disagree about the effects of these changes. Defendant argues that although "the prosecution provided officer testimony to establish two charges of unlawful firearm possession as predicate offenses but no evidence, other than an officer's opinion, established beyond a doubt that the predicate crimes were actually done for the benefit of the Sureños, nor what that benefit would be." The People argue the "jury would have found the gang enhancements to be true even under [Assembly Bill] 333's more stringent new requirements" and any deficiency in the jury instructions was harmless beyond a reasonable doubt. We agree with defendant and conclude the changes made by Assembly Bill 333 to section 186.22 undermined the jury's true findings on the gang enhancement allegations.

Here, the jury was not allowed to consider whether the evidence presented at trial was sufficient to prove a "'pattern of criminal activity'" under the amended law. As noted above, the revised definition of "'pattern of criminal activity'" increased the threshold of proof for the predicate offenses necessary for the gang enhancement. (§ 186.22, subd. (e)(1).) This included the notable new requirement of a common benefit to the gang derived from the predicate offenses, and that the benefit be more than reputational (§ 186.22, subd. (e)(1) ["'pattern of criminal gang activity' means … the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational"].)

The People contend the "jury would have found the gang enhancements to be true even under [Assembly Bill] 333's more stringent new requirements" and any deficiency in the jury instructions was harmless beyond a reasonable doubt. Specifically, they argue "[a]t trial, the evidence showed that the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense, the offenses were committed on separate occasions or by two or more gang members, and

20.

they commonly benefited a criminal street gang, and the common benefit was more than reputational." However, "in order to prove harmless error under the *Chapman* standard, it is not enough to show that substantial or strong evidence existed to support a conviction under the correct instructions." (*People v. Sek, supra*, 74 Cal.App.5th at p. 668.) For example, in *People v. Merritt* (2017) 2 Cal.5th 819, the trial court omitted the elements of robbery from the jury instructions, but the court held the error was harmless because the only contested issue at trial was the identity of the defendant. (*Id.* at p. 832.) "[The d]efendant knew what the elements of robbery were, and he had the opportunity to present any evidence he wished on the subject. '[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.'" (*Ibid.*, quoting *Neder v. United States* (1999) 527 U.S. 1, 17.) Moreover, in *People v. Vinson* (2011) 193 Cal.App.4th 1190, the court affirmed the defendant's conviction for petty theft with a prior theft conviction even though the law had changed after trial to require the proof of three prior convictions, rather than one. (*Id.* at p. 1200.) The defendant conceded he suffered two prior convictions, and his attorney stipulated at trial to a third conviction. Thus, there was no dispute as to whether the new element had been proved beyond a reasonable doubt. (*Ibid.*)

Here, the basis of the jury's verdict is unclear and disputed. Officer Garcia testified about several ways in which crime, the underlying offenses, or the use of a firearm could benefit a criminal street gang, but some of the evidence was reputational. On redirect examination, the prosecutor asked Officer Garcia, "Committing crimes in a gang like the [ESB], which are then a part of this Sureño organization, does that affect one's status in the gang?" and Officer Garcia responded:

> "If anything, it benefits them, committing certain crimes. By doing
> so they gain not only respect but bragging rights. And more than anything

21.

it just shows their loyalty and their commitment to the gang. And they are showing that they will do anything for the gang and will ultimately sacrifice their freedom for the gang."

Additionally, during closing argument, the prosecutor argued:

"Robberies enhance their status within the community. They discourage people from coming forward and reporting the crimes. They intimidate the community. They gain power and status for the gang member itself and the gang itself. That is the benefit that the gang receives from committing these crimes."

Although there was evidence of benefits to the gang that went beyond reputational, we cannot rule out the possibility the jury relied on the reputational benefit to the gang as its basis for finding the enhancements true. As our Supreme Court has articulated, "'The beyond-a-reasonable-doubt standard of *Chapman* "requir[es] the beneficiary of a [federal] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." [Citation.] "To say that an error did not contribute to the verdict is … to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." [Citation.] Thus, the focus is what the jury actually decided and whether the error might have tainted its decision. That is to say, the issue is "whether the … verdict actually rendered in this trial was surely unattributable to the error." [Citation.]'" (*People v. Pearson* (2013) 56 Cal.4th 393, 463.) Because we cannot say the jury did not rely on the reputational benefits as a basis for finding the gang enhancements true, we conclude the instructional error was not harmless under the *Chapman* standard.

"However, the People are not foreclosed from retrying [the defendant] on the gang enhancement upon remand under the new requirements of amended section 186.22. Put differently, '"[b]ecause we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial."'" (*People v. Sek, supra*, 74 Cal.App.5th at p. 669; accord, *People v. Figueroa* (1993) 20 Cal.App.4th 65, 72 ['Where,

22.

as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence']; see *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ['When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand'].)" (*Ramos, supra*, 77 Cal.App.5th at p. 1128.)

### B.     Section 1109

Defendant also contends newly enacted section 1109 should apply retroactively to his case and, therefore, requires reversal of his underlying conviction for second degree robbery.  He asserts the new statute, which in part, requires bifurcation of the trial on the gang enhancement(s) from the trial on the underlying charge(s) upon a defendant's request, entitles him to a reversal and retrial of his underlying conviction.  The People deny section 1109 should apply retroactively because it is a procedural rather than a substantive change in the law and that *Ramos* was incorrectly decided.  However, as *Ramos* stated, "Assembly Bill 333 expressly reflects the Legislature's belief '[t]he mere specter of gang enhancements pressures defendants to accept unfavorable plea deals rather than risk a trial filled with prejudicial evidence and a substantially longer sentence.' [Citation.]  [Therefore], it is apparent from the face of the legislation that it is aimed at mitigating wrongful punishment resulting from the admission of prejudicial and harmful gang evidence; thus, the *Estrada*[12] presumption is implicated." (*Ramos*, *supra*, 77 Cal.App.5th at p. 1131, fn. omitted.)  We see no reason to deviate from *Ramos*'s holding, and thus conclude section 1109 applies retroactively to this case.

Irrespective, the People contend defendant is not entitled to reversal of his conviction because he was not prejudiced by the failure to bifurcate the gang

---

[12]      *In re Estrada* (1965) 63 Cal.2d 740, 745 (it is presumed that when the Legislature amends a statute to lessen punishment, it "must have intended that the new statute imposing the

enhancement. We conclude defendant is not entitled to reversal of his conviction for second degree robbery because he was not harmed by the failure to bifurcate the trial. Accordingly, we affirm his conviction.

### i.    *Applicable Law*

"Pursuant to section 1109, subdivision (a), upon a defendant's request, a case in which a gang enhancement is charged under section 186.22, subdivision (b) or (d) must be tried in separate phases. Section 1109, subdivision (b) provides that '[i]f a defendant is charged with a violation of subdivision (a) of Section 186.22, this count shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. This charge may be tried in the same proceeding with an allegation of an enhancement under subdivision (b) or (d) of Section 186.22.'" (*Ramos, supra*, 77 Cal.App.5th at p. 1129.)

Section 1109 was added because:

> "(e)    California courts have long recognized how prejudicial gang evidence is. (See, e.g., *People v. Williams* (1997) 16 Cal.4th 153, 193.) Studies suggest that allowing a jury to hear the kind of evidence that supports a gang enhancement before it has decided whether the defendant is guilty or not may lead to wrongful convictions. [Citations.] The mere specter of gang enhancements pressures defendants to accept unfavorable plea deals rather than risk a trial filled with prejudicial evidence and a substantially longer sentence.

> "(f)    Bifurcation of trials where gang evidence is alleged can help reduce its harmful and prejudicial impact." (Stats. 2021, ch. 669, § 2, subds. (e), (f).)

### ii.    *Analysis*

Defendants' right to bifurcation under section 1109 is purely statutory. (*Ramos, supra*, 77 Cal.App.5th at pp. 1131–1133 [concluding § 1109 error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*)].) "'Typically, a defendant who

---

new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply").

24.

has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result.'" (*People v. Anzalone* (2013) 56 Cal.4th 545, 553; accord *People v. Epps* (2001) 25 Cal.4th 19, 29 [where the error "is purely one of state law, the *Watson* harmless error test applies"].)

Here, the evidence of defendant's guilt supporting his robbery conviction was strong. Alfredo testified defendant pulled out a firearm, pointed it at his stomach, and demanded he hand over his money and cell phone, which he subsequently did. Later on, officers located defendant and found him with $75 and two cell phones, one of which was identified by Alfredo as belonging to him. Alfredo identified defendant both on scene and in court as the individual who pointed the gun at him and demanded his property. Subsequently, officers located a firearm in a side yard of the residence, which Alfredo later identified as appearing as similar to the one used during the robbery. Defendant was also observed in photographs with a firearm and high-capacity magazine, similar to the firearm located at the robbery scene.

Additionally, some of the gang evidence was relevant to motive. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167 ["evidence related to gang membership is not insulated from the general rule that all relevant evidence is admissible if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative"].) It was relevant for the jury to hear that gang members commit robberies because it "forc[es] others to give up their money and their property, in turn they can use that money to … pay their hood taxes" and "[t]hey can use it to pay for other gang members' bail when they get arrested." Further, because robbery is a violent crime it has a "negative effect on the community" in that it keeps others from reporting bad behavior going forward. However, any potential prejudice from the gang evidence was mitigated when the trial court provided the jury with a limiting instruction regarding its consideration of the gang evidence, which we presume it followed. (See *People v.*

*Pearson, supra*, 56 Cal.4th at p. 414 ["We presume that jurors understand and follow the court's instructions."].) Accordingly, we conclude defendant was not prejudiced by the failure to bifurcate the gang enhancement allegations. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 ["Any evidence admitted solely to prove the gang enhancement was not so minimally probative on the charged offense, and so inflammatory in comparison, that it threatened to sway the jury to convict regardless of defendants' actual guilt."].) Therefore, we affirm defendant's conviction for second degree robbery. (See *People v. E.H., supra*, 75 Cal.App.5th at p. 480 [failure to bifurcate was harmless under *Watson* standard in light of "'overwhelming'" evidence in support of robbery convictions, stating "[e]ven if section 1109 applied retroactively to this case—an issue we need not and do not decide here—E.H. cannot show it is 'reasonably probable' he would have obtained a more favorable result if his trial had been bifurcated"].)

## IV. Defendant is Entitled to Resentencing

In supplemental briefing, defendant contends newly enacted Senate Bill 567 and Assembly Bill 124 apply retroactively to his case, and he is entitled to the benefits of newly amended section 1170. The People agree defendant is entitled to the benefit of the recent amendments and, thus, remand is required. We accept the People's concession, vacate defendant's sentence, and remand for resentencing.

Prior to Senate Bill 567, section 1170, subdivision (b), provided as follows:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall

26.

set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law.  A term of imprisonment shall not be specified if imposition of sentence is suspended." (§ 1170, former subd. (b).)

As amended effective January 1, 2022, section 1170, subdivision (b), provides in relevant part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term .…" (*Id.,* subd. (b)(1).)  "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term … exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial .…" (*Id.,* subd (b)(2).)

Further, Assembly Bill 124 sets a presumption the trial court will impose the lower term under enumerated circumstances, such as where an offender's childhood trauma or youth were contributing factors in the offense.  The legislation added subdivision (b)(6) to section 1170 and states:

"(6)    Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

"(A)    The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

"(B)    The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

"(C)    Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or

27.

human trafficking." (§ 1170, subd. (b)(6); Stats. 2021, ch. 695, § 5.1, eff. Jan. 1, 2022.)

Section 1016.7, subdivision (b), states, "A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."

As this case is not yet final, defendant is entitled to the retroactive application of section 1170, as amended by Senate Bill 567 and Assembly Bill 124 because the amendments are ameliorative, and nothing indicates the Legislature intended the amendments to apply solely prospectively. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039.)

Here, because defendant was 21 years old at the time of the offense, it is possible his age "was a contributing factor in the commission of the offense" that may require imposition of the lower term. (§ 1170, subd. (b)(6).) We do not address the merits of defendant's claim regarding the application of Senate Bill 567 to his sentence in light of our decision remand is necessary under Assembly Bill 124. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant."]; accord, *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["'the full resentencing rule'"].)

## DISPOSITION

Defendant's sentence is vacated and this matter is remanded for resentencing consistent with this opinion. Pursuant to Assembly Bill 333, we dismiss the gang enhancements (§ 186.22, subd. (b)(1)) as to all counts, but conclude the People are not foreclosed from retrying defendant on these enhancements on remand. Thereafter, the trial court is directed to file an amended and corrected abstract of judgment and transmit

copies thereof to the appropriate authorities.  In all other respects, the judgment is affirmed.


                                                                                    MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.